**NOT FOR PUBLICATION**

```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| ANGEL MANUEL AYALA, III, | Civil Action No. 07-2157 (MLC) |
| Plaintiff, | |
| v. | **OPINION** |
| GEORGE W. HAYMAN, et al., | |
| Defendants. | |

**APPEARANCES:**

    ANGEL MANUEL AYALA, III, #293450/417724B, Plaintiff Pro Se
    New Jersey State Prison, Trenton, New Jersey

**COOPER**, District Judge

Plaintiff, a prisoner incarcerated at New Jersey State Prison ("NJSP"), submitted for filing a civil rights Complaint and application to proceed in forma pauperis ("Application"). Having reviewed the allegations and Application, as required by 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), the Court will grant the Application, allow the due process claim regarding placement in protective custody to proceed, and dismiss the remaining federal claims raised in the Complaint.

## BACKGROUND

Plaintiff alleges violation of his constitutional rights by George W. Hayman, Commissioner of the New Jersey Department of Corrections; Michelle Ricci, administrator of NJSP; and the Security Investigation Department ("SID"). He asserts the following facts, which this Court will regard as true for the

purposes of this review.  See Stevenson v. Carroll, 495 F.3d 62, 66 (3d Cir. 2007).  Plaintiff alleges that on March 2, 2005, NJSP officials charged him with a disciplinary infraction for fighting after he defended himself when another inmate hit him from behind.  Plaintiff states that Hearing Officer Ozvart conducted the disciplinary hearing and told Plaintiff that he was not going to find Plaintiff guilty of the charge.  But Plaintiff asserts that Ozvart changed his mind, found him guilty and sanctioned him with 15 days in lock-up, 180 days in administrative segregation, and loss of 180 days of good conduct time.

   Plaintiff alleges that Sgt. Alamo subsequently told him that officials had information that Plaintiff's life was in danger and that Plaintiff may be placed in protective custody.  Plaintiff states that he signed a document refusing the placement, and on April 14, 2005, officials transferred him to East Jersey State Prison.  On July 21, 2005, officials allegedly transferred Plaintiff back to NJSP, and placed him in protective custody. Plaintiff asserts that on November 1, 2005, he received a memorandum from Mr. Cathel stating that the Protective Custody placement has been reviewed and is warranted.  Plaintiff alleges that, although he wrote letters to the Commissioner and other officials, on September 14, 2006, the Classification Committee denied his request to be returned to general population.

   Plaintiff's complaint itemizes his custody classification history since his incarceration in 1997, including placements in

2

protective custody and the security threat group management unit, to show that the SID "always believes the lies their snitches tell them and they stick me in protective custody. Now S.I.D. wants to send me out of state and I only have twenty-one months left." (Compl., ¶¶ 150-151.)  Plaintiff asserts that Defendants Hayman and Ricci know that the SID "has a history of covering[-up] brutal assaults on prisoners, fabricating charges on prisoners, and harassing prisoners," but have done nothing to stop it.  (Id., pp. 27-28.)  Plaintiff seeks damages for violation of his constitutional rights.

## STANDARD FOR SUA SPONTE DISMISSAL

The Court, as soon as practicable, must review a complaint in a civil action in which a plaintiff is proceeding in forma pauperis or a prisoner seeks redress against a governmental employee or entity.  See 28 U.S.C. §§ 1915(e)(2)(B), 1915A.  The Court must sua sponte dismiss a claim that is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  Id.

"A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (cites and quotes omitted); see Haines v. Kerner, 404 U.S. 519, 520 (1972).

3

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'  Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson, 127 S.Ct. at 2200 (cites and internal quotes omitted).  Although "there are reasonable inferences apart from [a constitutional violation] that c[an] be drawn from the complaint . . . the fact that such inferences may be drawn [can be] proof that [a] dismissal was premature.  [A plaintiff can meet the] obligation to provide grounds for . . . entitlement to relief by presenting factual allegations sufficient to raise [a] right to relief above a speculative level." Stevenson v. Carroll, 495 F. 3d at 65-67.

A claim is frivolous if it "lacks even an arguable basis in law" or its factual allegations describe "fantastic or delusional scenarios." Neitzke v. Williams, 490 U.S. 319, 328 (1989); see Roman v. Jeffes, 904 F.2d 192, 194 (3d Cir. 1990).  "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)); see Thomas v. Independence Tp., 463 F.3d 285, 296-97 (3d Cir. 2006).

4

**DISCUSSION**

A plaintiff, to recover under 42 U.S.C. § 1983, must show (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970).

The Court construes Plaintiff's allegations as raising three due process claims: (1) imposition of the disciplinary sanction consisting of 15 days in lock-up and 180 days in administrative segregation violated due process; (2) confinement in protective custody since July 21, 2005, violates due process; and (3) the threatened out-of-state transfer violates due process.[1]

The Due Process Clause of the Fourteenth Amendment of the Constitution of the United States provides: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. To analyze a procedural due process claim, the first step is to decide whether the person was deprived of a liberty or property interest protected by due process. See Wilkinson v. Austin, 545 U.S. 209,

---

[1] The New Jersey Administrative Code defines protective custody as "confinement to a secure unit designated to restrict or limit an inmate's activities and contacts with others, in order to provide protection to the inmate from injury or harm actually threatened, or reasonably believed to exist based on events, investigative reports, reports from an informant(s) or other reliable source(s) of information." N.J. Admin. Code § 10A:1-2.2.

221 (2005). Only if the answer is yes, must a court determine what process is due. See Morrissey v. Brewer, 408 U.S. 471 (1972).

"A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty' . . . , or it may arise from an expectation or interest created by state laws or policies." Wilkinson, 545 U.S. at 221 (cites omitted); see Sandin v. Conner, 515 U.S. 472, 483-484 (1995). But "the Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." Sandin, 515 U.S. at 478. "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Montanye v. Haymes, 427 U.S. 236, 242 (1976); see Vitek v. Jones, 445 U.S. 480, 493 (1980). Accordingly, a convicted inmate like Plaintiff has no liberty interest arising by force of the Due Process Clause itself "in avoiding transfer to more adverse conditions of confinement," Wilkinson, 545 U.S. at 221; see Hewitt v. Helms, 459 U.S. 460, 466-67 & n.4 (1983); Montanye, 427 U.S. at 242, or to an out-of-state facility. See Olim v. Wakinekona, 461 U.S. 238 (1983).

But "a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations," Wilkinson, 545 U.S. at 222, which impose "atypical and

6

significant hardship on the inmate in relation to the ordinary incidents of prison life". Sandin, 515 U.S. at 484. As the Sandin Court explained,

> Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest. The record shows that, at the time of Conner's punishment, disciplinary segregation, with insignificant exceptions, mirrored those conditions imposed upon inmates in administrative segregation and protective custody . . . . Thus, Conner's confinement did not exceed similar, but totally discretionary confinement in either duration or degree of restriction.

Sandin, 515 U.S. at 486 (footnote omitted).

"[T]he baseline for determining what is 'atypical and significant' - the 'ordinary incidents of prison life' is ascertained by what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law." Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir. 1997). "In deciding whether a protected liberty interest exists under Sandin, [a court] consider[s] the duration of the . . . confinement and the conditions of that confinement in relation to other prison conditions." Mitchell v. Horn, 318 F.3d 523, 532 (3d Cir. 2003). For instance, 15 months in administrative segregation did not impose an atypical and significant hardship on one inmate. See Griffin, 112 F. 3d at 706. But another inmate had a liberty interest in avoiding eight years in solitary confinement, which consisted of confinement in a cell for 23 hours per day for five days a week, and 24 hours per day for two

days a week, deprivation of all contact with family and other inmates, and denial of access to all organizational activities, with no prospect of release in the near future. See Shoats v. Horn, 213 F. 3d 140, 144 (3d Cir. 2000). Cf. Fraise v. Terhune, 283 F. 3d 506, 522-23 (3d Cir. 2002) ("Although inmates who are transferred to the [Security Threat Group Management Unit] face additional restrictions . . . the transfer to the STGMU does not impose an atypical and significant hardship in relation to the ordinary incidents of prison life.")

The Supreme Court, in Wilkinson v. Austin, 545 U.S. 209 (2005), held that confinement in Ohio's supermax prison imposes an atypical and significant hardship on inmates. The Court based its holding on the following facts in the record regarding the conditions of confinement:

> For an inmate placed in [supermax], almost all human contact is prohibited, even to the point that conversation is not permitted from cell to cell; the light, though it may be dimmed, is on for 24 hours; exercise is for 1 hour per day, but only in a small indoor room. Save perhaps for the especially severe limitations on all human contact, these conditions likely would apply to most solitary confinement facilities, but here there are two added components. First is the duration. Unlike the 30-day placement in Sandin, placement [in supermax] is indefinite and, after an initial 30-day review, is reviewed just annually. Second is that placement disqualifies an otherwise eligible inmate for parole consideration. While any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context.

Id. at 223-24 (citations omitted).

Applying Sandin and Wilkinson, this Court holds that neither the potential transfer to an out-of-state prison nor the disciplinary sanction of 180 days in administrative segregation and 15 days in lock-up, imposed an atypical and significant hardship. But Plaintiff's potentially indefinite confinement in protective custody may do so. Transfer to another state is discretionary, and therefore not atypical.[2] And Plaintiff's disciplinary confinement in lock-up and administrative segregation, being limited to 15 and 180 days respectively, is not atypical and significant. See Torres v. Fauver, 292 F. 3d 141, 151-52 (3d Cir. 2002) (disciplinary detention for 15 days and administrative segregation for 120 days not atypical treatment in New Jersey prison).

But a reasonable inference from Plaintiff's factual allegations is that Plaintiff's confinement in protective custody since July 21, 2005, is of potentially indefinite duration. Given the liberal construction which this Court is required to provide to a pro se plaintiff's allegations, see Stevenson v. Carroll, 495 F. 3d at 65-67, this Court cannot presume as a

---

[2] New Jersey prison officials have discretion to transfer an inmate to any state party to the Interstate Correction Compact. See N.J.S.A. § 30:7C-5(a); see also Overturf v. Massie, 385 F.3d 1276, 1279 (10th Cir. 2004) ("incarceration in Oklahoma following conviction and sentencing in Hawaii state court cannot, by itself, form the basis for a due process challenge"); White v. Lambert, 370 F. 3d 1002, 1013 (9th Cir. 2004) (inmate has no state-created liberty interest in avoiding transfer to out-of-state privately run prison).

9

matter of law that the specific conditions in protective custody are not atypical and significant under Wilkinson.  See Mitchell v. Horn, 318 F. 3d 523, 532 (3d Cir. 2003) (reversing district court's sua sponte dismissal of claim that segregated confinement in Pennsylvania facility violated due process, "given this case's procedural posture and the fact that Mitchell prepared his complaint pro se, the record is not sufficiently developed for us to determine whether there were other features of Mitchell's confinement that meaningfully distinguished his situation from that in Griffin").[3]  This Court will therefore dismiss the due

---

[3] The Third Circuit Court of Appeals has yet to apply Wilkinson, but several circuits have refined their due process analyses in light of Wilkinson.  See, e.g., Est. of DiMarco v. Wyo. Dep't of Corrs., 473 F.3d 1334, 1342 (10th Cir. 2007) (relevant factors in applying Wilkinson "include whether (1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement, as it did in Wilkinson; and (4) the placement is indeterminate"); Fogle v. Pierson, 435 F.3d 1252, 1259 (10th Cir. 2006) (reversing dismissal of due process claim that prisoner's confinement in administrative segregation for three years violated due process under Wilkinson); Skinner v. Cunningham, 430 F. 3d 483, 487 (1st Cir. 2005) (distinguishing Wilkinson, court held segregated confinement for 40 days of inmate serving sentence for murder who had just killed another inmate was not atypical and significant hardship); Westefer v. Snyder, 422 F. 3d 570, 589 (7th Cir. 2005) (reversing dismissal of claim that transfer to high-security correctional center did not violate due process, court found allegations of complaint "under the now-governing standards of Wilkinson" preclude dismissal, as state's "contention that the liberty interest identified in Wilkinson turned exclusively on the absence of parole constitutes . . . far too crabbed a reading of the decision").

process claims concerning the disciplinary sanction and out-of-state transfer, and allow the due process claim regarding placement in protective custody since July 21, 2005, to proceed past the sua sponte dismissal stage.[4]

**CONCLUSION**

 The Court grants the Application, dismisses the federal claims concerning the disciplinary sanction and out-of-state transfer, dismisses the claims asserted against SID, and allows the due process claim concerning protective custody to proceed. The Court will issue an appropriate order.

            s/ Mary L. Cooper
            **MARY L. COOPER**
            United States District Judge

Dated: November 29, 2007

---

[4] This Court will also dismiss the SID as defendant because it is not a person subject to suit under 42 U.S.C. § 1983. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).