**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ANGEL MANUEL AYALA, III, | : CIVIL ACTION NO. 07-2157 (MLC) |
| Plaintiff, | : **MEMORANDUM OPINION** |
| v. | : |
| GEORGE W. HAYMAN, et al., | : |
| Defendants. | : |

**COOPER, District Judge**

Plaintiff, Angel Manuel Ayala, III, alleges a claim pursuant to 42 U.S.C. § ("Section") 1983 against defendants, George W. Hayman ("Hayman") and Michelle R. Ricci ("Ricci") (collectively, "defendants"). (Dkt. entry no. 1, Compl.) Defendants now move for summary judgment in their favor pursuant to Federal Rule of Civil Procedure ("Rule") 56(c). (Dkt. entry no. 18.) Plaintiff opposes the motion. (Dkt. entry nos. 23, 25, & 30.) The Court determines this motion on briefs without an oral hearing, pursuant to Rule 78(b). For the reasons stated herein, the Court will grant the motion.

BACKGROUND

Plaintiff is incarcerated in New Jersey State Prison ("NJSP"). (Dkt. entry no. 18, Def. Stmt. of Material Facts ("Def. Facts"), at ¶ 1.) Plaintiff has been housed in the Protective Custody Unit (the "PCU") since he arrived at NJSP on July 21, 2005. (Id. at ¶ 2.) In May 2007, plaintiff (1) brought

this action, alleging various claims pursuant to Section 1983 against defendants and defendant Security Investigation Department ("SID"), and (2) submitted an application to proceed in forma pauperis. (Compl.)  In December 2007, the Court reviewed the application and the allegations in the complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). (Dkt. entry no. 4, 12-13-07 Op.)  The Court (1) granted the application to proceed in forma pauperis, (2) dismissed the complaint insofar as it was asserted against SID, (3) dismissed the complaint insofar as it alleged a Fourteenth Amendment Due Process claim "regarding the disciplinary sanction of 15 days in lock-up and 180 days in administrative segregation, and the out-of-state transfer", and (4) allowed the complaint to proceed insofar as it alleged a Fourteenth Amendment Due Process claim "regarding the confinement in protective custody" since July 21, 2005.  (12-13-07 Op., at 9-11; dkt. entry no. 5, 12-3-07 Order.) Thus, the only claim remaining here is a Fourteenth Amendment Due Process claim regarding plaintiff's confinement in the PCU since July 21, 2005.  (See 12-3-07 Order.)

    Defendants now move for summary judgment in their favor, arguing that plaintiff did not exhaust his administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  (Dkt. entry no. 18, Def. Br., at 1.) Plaintiff opposes the motion.  (Dkt. entry nos. 23, 25, & 30.)

**DISCUSSION**

**I.   Summary Judgment Standard**

Rule 56(c) provides that summary judgment is proper if the pleadings, the discovery and disclosure materials, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Id.  The summary judgment movant bears the initial burden of showing that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the movant has met this prima facie burden, the non-movant must set out specific facts showing that there is a genuine issue for trial.  Fed.R.Civ.P. 56(e)(2).  A non-movant must present actual evidence that raises a genuine issue of material fact and may not rely on mere allegations.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The Court must view the evidence in the light most favorable to the non-movant when deciding a summary judgment motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  At the summary judgment stage, the Court's role is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson, 477 U.S. at 249.  Under this standard, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient [to defeat a Rule

56(c) motion]; there must be evidence on which the jury could reasonably find for the [non-movant]." Id. at 252. "By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." Id. at 247-48 (emphasis in original). A fact is material only if it might affect the action's outcome under governing law. Id. at 248. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted).

## II. Prison Litigation Reform Act

The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).[1]

---

[1] Failure to exhaust administrative remedies is an affirmative defense under the PLRA. Jones v. Bock, 127 S.Ct. 910, 921 (2007). Defendants "have the burden of pleading and proving the defense in a motion for summary judgment or at trial." Kounelis v. Sherrer, No. 04-4714, 2005 WL 2175442, at *6 (D.N.J. Sept. 6, 2005). Defendants have properly raised the affirmative defense by asserting it in their motion for summary judgment. (Dkt. entry no. 18.)

The exhaustion of all administrative remedies is mandatory, even if (1) the prisoner believes they are ineffective, or (2) the available administrative process cannot grant the desired remedy. Booth v. Churner, 532 U.S. 731, 739-41 (2001); see Porter v. Nussle, 534 U.S. 516, 524 (2002) (explaining that (1) "exhaustion in cases covered by [section] 1997e(a) is . . . mandatory", (2) "[a]ll 'available' remedies must . . . be exhausted", and (3) the remedies need "not meet federal standards, nor must they be 'plain, speedy, and effective.'"). Therefore, to comply with the PLRA, a prisoner must properly exhaust administrative remedies as a precondition to bringing a federal claim in federal court, or risk procedural default. Warren v. Pennsylvania, No. 07-3011, 2008 WL 3318994, at *3 (3d Cir. Aug. 12, 2008); Bailey-El v. Fed. Bur. of Prisons, 246 Fed.Appx. 105, 107 (3d Cir. 2007); Jackson v. Ivers, 244 Fed.Appx. 508, 512 (3d Cir. 2007).

The PLRA's exhaustion requirement applies to all actions brought by inmates "about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, 534 U.S. at 532. The Court, in determining whether a prisoner has properly exhausted administrative remedies, must evaluate the prisoner's compliance with the prison's administrative regulations governing inmate grievances, and the waiver, if any, of such regulations by prison officials. Jackson, 244 Fed.Appx. at 512; Spruill v.

Gillis, 372 F.3d 218, 222 (3d Cir. 2004).[2] "[C]ompliance with the administrative remedy scheme will be satisfactory if it is substantial." Nyhuis v. Reno, 204 F.3d 65, 77-78 (3d Cir. 2000).

The PLRA exhaustion requirement contemplates that the prisoner must bring a grievance to the attention of the appropriate prison official so that the official has an opportunity to respond to the grievance before the prisoner resorts to the courts. Spruill, 372 F.3d at 227; see Porter, 534 U.S. at 524-25 (indicating PLRA "afford[s] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."). Moreover, after filing an initial complaint, the prisoner must carry the grievance through any available appeals process. Nyhuis, 204 F.3d at 67. Thus, a prisoner has not exhausted administrative remedies until the prisoner has pursued a grievance through each level of appeal available within the prison system. Spruill, 372 F.3d at 232.

A failure to exhaust administrative remedies, however, may be excused in some circumstances. Ramos v. Smith, No. 04-249, 2005 WL 3054291, at *5-*6 (E.D. Pa. Nov. 14, 2005). For example, a failure to exhaust administrative remedies may be excused if

---

[2] The PLRA's exhaustion requirement applies to grievance procedures set forth in a New Jersey Department of Corrections ("NJDOC") inmate handbook, even if that handbook is not formally adopted by a state administrative agency. Concepcion v. Morton, 306 F.3d 1347, 1355 (3d Cir. 2002).

"prison officials precluded [the prisoner] from filing administrative requests or appeals so that [the] [d]efendant is estopped from raising exhaustion as an affirmative defense." See id. at *6.  Also, if "the procedures were unclear," that may create "special circumstances that justify excusing the exhaustion requirement."  See id.

    The grievance procedure at NJSP is as follows.  If a prisoner wishes to file a grievance, an "Administrative Remedy Form" may be obtained from a supply in the prisoner's housing unit.  (Dkt. entry no. 18, Declaration of Brenda A. Hutton ("Hutton Decl."), at ¶ 3.)  When the prisoner completes the form, the prisoner is to deposit it into a collection box, located in the prisoner's housing unit or compound.  (Id.)  If a prisoner is in a "Close Custody Unit", the prisoner is to give the form to the housing unit Custody Supervisor or a Social Worker.  (Id.) The "Coordinator" receives the Administrative Remedy Form and reviews it "to ensure that it has been properly completed and that the matter has not been previously dealt with 'on the spot'".  (Id. at ¶ 4.)  The Coordinator then forwards the form "to an appropriate staff member for response".  (Id.)  A response to an Administrative Remedy Form "shall be received within thirty (30) working days from the date the form is forwarded".  (Id.)

    The "Administrator(s)" will then review the staff member's response to the Administrative Remedy Form.  (Id. at ¶ 5.)  When

7

the response is "acceptable" and "properly signed", the Administrative Remedy Form will be returned to the Coordinator for distribution.  (Id.)  If the prisoner is not satisfied with the response, the prisoner may file an appeal with the Administrator "within ten (10) working days of the receipt of the response".  (Id. at ¶ 6.)  The "Appeal Decision" will be rendered by the Administrator "within ten (10) working days".  (Id.)  The Administrative Remedy Form with the appeal decision will then be returned to the Coordinator for distribution.  (Id.)  Once an Appeal Decision has been rendered, the prisoner's administrative remedies are exhausted.  (Id.)

     Plaintiff has submitted several letters he sent to various NJSP officials, Hayman, Jon S. Corzine, the Governor of New Jersey, and other state officials, with regard to his continued confinement in the PCU, as well as other matters regarding his incarceration.  (See Compl; dkt. entry no. 30, 7-9-08 Pl. Letter.)  However, there is no evidence that plaintiff submitted an Administrative Remedy Form with regard to his continued confinement in the PCU, as required under the NJSP grievance procedure, discussed supra.  Moreover, even if plaintiff had submitted such a form and received a response, there is no evidence that he filed an appeal pursuant to the NJSP grievance procedure, discussed supra.  See Spruill, 372 F.3d at 232.

8

Plaintiff also has submitted several Administrative Remedy Forms related to other matters. (See dkt. entry no. 23, 5-28-08 Pl. Letter, Ex., 5-3-08 Administrative Remedy Form; Ex., 3-17-08 Administrative Remedy Form; 7-9-08 Letter, Ex., 1-11-06 Administrative Remedy Form.) The 3-17-08 Administrative Remedy Form and the 5-3-08 Administrative Remedy Form, however, were submitted to prison officials after plaintiff brought this action, and thus cannot be considered in determining whether plaintiff exhausted his administrative remedies for the claim alleged in the complaint. See Warren, 2008 WL 3318994, at *3 (noting that a prisoner must exhaust available administrative remedies before bringing an action in federal court).

The 5-3-08 Administrative Remedy Form, moreover, appears to concern an unrelated incident of alleged harassment and assault by a prison official. (See 5-28-08 Pl. Letter, Ex., 5-3-08 Administrative Remedy Form.) See Jackson, 244 Fed.Appx. at 513 (noting that although "perfect overlap between the grievance and a complaint is not required by the PLRA", there must be a "shared factual basis between the two"). Further, although the 3-17-08 Administrative Remedy Form does concern plaintiff's continued placement in the PCU, it appears that plaintiff did not file an appeal to the staff response to this grievance. (See 5-28-08 Pl. Letter, Ex., 3-17-08 Administrative Remedy Form.) See Spruill, 372 F.3d at 232.

Although the 1-11-06 Administrative Remedy Form was submitted before plaintiff brought this action, it does not pertain to plaintiff's continued confinement in the PCU. (See 7-9-08 Letter, Ex., 1-11-06 Administrative Remedy Form.) Rather, it appears to relate to medical services plaintiff received. (See id.) Thus, there is no shared factual basis between the 1-11-06 Administrative Remedy Form regarding medical services and plaintiff's Fourteenth Amendment Due Process claim regarding his continued confinement in the PCU. See Jackson, 244 Fed.Appx. at 513. Further, it appears that plaintiff did not appeal the staff member's response to this grievance. (See 7-9-08 Letter, Ex., 1-11-06 Administrative Remedy Form.) See Spruill, 372 F.3d at 232.

Plaintiff also has not put forth any evidence that NJSP officials precluded him from filing Administrative Remedy Forms or appeals, or that the NJSP grievance procedure was unclear. See Ramos, 2005 WL 3054291, at *6. Indeed, the NJDOC advised plaintiff "to submit an Inmate Remedy Form" regarding his "current housing assignment" in August 2006. (See Compl., Ex., 8-2-06 NJDOC Letter.) Thus, because plaintiff has failed to exhaust his administrative remedies pursuant to the PLRA, the Court will grant defendants' motion here.

**III. Section 1983 Claim**

Defendants have not addressed the merits of plaintiff's Section 1983 claim. However, the Court notes that even if

10

plaintiff had properly exhausted his administrative remedies, his Section 1983 claim would still fail. A plaintiff asserting civil rights violations under Section 1983 must establish that the defendant acted under color of state law to deprive him or her of a right secured by the Constitution or the laws of the United States. Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995). Section 1983 does not create substantive rights, but instead provides a remedy for the violation of rights created by other federal laws. Id.; Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).

For a plaintiff's Section 1983 claim to survive a motion for summary judgment, there must be a genuine issue of fact as to whether the defendant (1) acted under color of state law; or (2) deprived the plaintiff of a federal right. Groman, 47 F.3d at 633. "The color of state law element is a threshold issue; there is no liability under [Section] 1983 for those not acting under color of law." Id. at 638. Further, officials may be liable under Section 1983 for the acts of those over whom they have supervisory responsibility. However, civil rights liability cannot be predicated solely on the doctrine of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Personal involvement in the alleged wrong-doing must be shown. Id.

"Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence", which must be made with appropriate particularity. Id.; see Thomas v. Independence Twp., 463 F.3d 285, 298 (3d Cir. 2006) (reversing order denying motion to dismiss Section 1983 claims because there were no allegations that the defendant was personally involved through either direction or knowledge and acquiescence with the alleged wrongs); Jetter v. Beard, 130 Fed.Appx. 523, 526 (3d Cir. 2005) (affirming dismissal of Section 1983 claims against supervisory defendants because plaintiff did not allege any facts to support a conclusion that those defendants had personal involvement in the medical treatment he received).

The complaint asserts that Ricci "is the administrator of [NJSP]. She is legally responsible for the overall operation of the prison." (Id. at 5.) It further states that "it is her responsibility to oversee all officials in [NJSP]". (Id. at 27.) There are no other specific allegations as to Ricci in plaintiff's papers. Thus, as plaintiff fails to allege or show that Ricci was personally involved in the allegedly unconstitutional conduct, Ricci is entitled to summary judgment as to the Section 1983 claim here. See Rode, 845 F.2d at 1207.

The complaint also asserts that Hayman "oversee[s] all defendants and as such he is responsible for [their] actions" and

12

that it is "his responsibility to oversee all institutions". (Compl., at 4, 27.)  It also alleges that Hayman failed to properly investigate defendant SID's "history of covering brutal assaults on prisoners, fabricating charges on prisoners, and harassing prisoners".  (Id. at 27.)  Further, Hayman "knows" of defendant SID's conduct and "does nothing to stop it".  (Id.)[3]

Liability under Section 1983 cannot be based on respondeat superior, as noted supra, and as such Hayman cannot be held liable simply because he "oversees" the NJDOC.  See Rode, 845 F.2d at 1207.  Further, the remaining allegations do not relate to plaintiff's Fourteenth Amendment Due Process claim with regard to his confinement in the PCU.  Plaintiff has not otherwise alleged or shown that Hayman was personally involved in his continued confinement in the PCU.  Thus, Hayman is entitled to summary judgment as to plaintiff's Section 1983 claim.  See id.

---

[3] Plaintiff also appears to allege that Hayman ignored or dismissed his grievances "in abuse of power, harassment and deprivation", and submitted as an exhibit a letter to Hayman, dated April 5, 2006, entitled "Regarding unsatisfactory remedial procedures".  (Compl., at 27; see 7-9-08 Pl. Letter, Ex., 4-15-06 Letter to Hayman.)  The Court notes that prisoners do not have a constitutional right to prison grievance procedures.  Travillion v. Leon, 248 Fed.Appx. 353, 356 (3d Cir. 2007).  Thus, to the extent that plaintiff is asserting a constitutional claim against Hayman with regard to the grievance procedure at NJSP, it is not "independently actionable" as a constitutional claim.  See Heleva v. Kramer, 214 Fed.Appx. 244, 247 (3d Cir. 2007).

**CONCLUSION**

For the reasons stated <u>supra</u>, the Court will grant defendants' motion for summary judgment.  The Court will issue an appropriate order and judgment.

 s/ Mary L. Cooper  
**MARY L. COOPER**  
United States District Judge

Dated:   August 28, 2008